```
UNITED STATES DISTRICT COURT
   MIDDLE DISTRICT OF TENNESSEE
        NASHVILLE DIVISION
```

| | | |
|---|---|---|
| WILLIAM GLENN WILEY | ] | |
|     Petitioner, | ] | |
| | ] | |
| v. | ] | No. 3:13-1345 |
| | ] | Judge Sharp |
| ERIC QUALLS | ] | |
|     Respondent. | ] | |

### **M E M O R A N D U M**

The petitioner, proceeding *pro se*, is an inmate at the Bledsoe County Correctional Complex in Pikeville, Tennessee. He brings this action pursuant to 28 U.S.C. § 2254 against Eric Qualls, Warden of the facility, seeking a writ of habeas corpus.

### **I. Background**

In 1999, a jury in Davidson County found the petitioner guilty of first degree felony murder and especially aggravated robbery. For these crimes, he received concurrent sentences of life imprisonment without the possibility of parole and twenty five (25) years, respectively.

On direct appeal, the Tennessee Court of Criminal Appeals affirmed the convictions. The Tennessee Supreme Court then denied petitioner's application for additional review.

A post-conviction petition was filed in the Circuit Court of

1

Davidson County. Following the appointment of counsel and an evidentiary hearing, the trial court found that the failure to instruct the jury on second degree murder as a lesser included offense was error. Relief was granted in the form of a new trial as to the felony murder conviction only. The court did not disturb the especially aggravated robbery conviction.

On appeal, the Tennessee Court of Criminal Appeals affirmed the trial court's ruling. Upon further review of the record, though, the Tennessee Supreme Court held that the failure to instruct the jury on second degree murder as a lesser included offense was not error. However, that court determined that the petitioner had been denied the effective assistance of trial counsel. The lower court rulings were reversed and the case was remanded for a new trial as to all charges. Wiley v. Tennessee, 183 S.W.3d 317,335 (Tenn.2006).

On February 9, 2007, a second jury in Davidson County found the petitioner guilty of first degree felony murder and especially aggravated robbery. Docket Entry No.16-4 at pg.117. He was sentenced to concurrent terms of life imprisonment without the possibility of parole and twenty (20) years, respectively. *Id*. at pgs.119,121-122.

On direct appeal, the Tennessee Court of Criminal Appeals affirmed the convictions. Docket Entry No.16-23. The Tennessee Supreme Court later denied petitioner's application for further

2

direct review. Docket Entry No.16-25.

In August, 2010, the petitioner filed a petition for post-conviction relief in the Circuit Court of Davidson County. Docket Entry No.16-26 at pgs.4-19. Counsel was appointed and the petitioner filed an amended post-conviction petition. Following an evidentiary hearing, the trial court denied the petitioner post-conviction relief. *Id.* at pgs.76-82.

On appeal, the Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief. Docket Entry No.16-32. The Tennessee Supreme Court chose not to grant the petitioner's request for additional review. Docket Entry No.16-34.

## II. Procedural History

On October 9, 2013, the petitioner initiated this action with the pro se filing of a petition for writ of habeas corpus (Docket Entry No.1).[1] The petition contains ten claims for relief. These claims include:

> 1) the petitioner was denied the effective assistance of counsel[2]
>    a) "due to the State's delayed disclosure of exculpatory evidence",
>    b) due to counsel's failure to move for a continuance following the delayed disclosure of evidence,
>    c) due to counsel's failure to call

---

[1] The petition was originally filed in the Eastern District of Tennessee. It was later transferred to this judicial district by an order (Docket Entry No.4) entered on December 3, 2013.

[2] At trial, the petitioner was represented by Jodie Bell, a member of the Nashville Bar.

> a physician who had concluded that
> the victim's medication could have
> caused the bleeding that led to
> his death;

2) <u>Brady</u> violations - delayed disclosure of exculpatory evidence
   a) fingerprint evidence,
   b) taped interview of a prosecution witness (Michelle Scheffel) by police,
   c) taped statements of the petitioner with his mother and with Scheffel,
   d) reports prepared by Detective Flair, including the fact that he collected several pairs of shoes from the petitioner,
   e) cumulative effect of the delayed disclosures;

3) sufficiency of the evidence; and

4) violation of the separation of powers, i.e., the sentencing guidelines are unconstitutional because the State Legislature placed sitting judges on the Sentencing Commission.

Upon its filing, the Court examined the petition and determined that the petitioner had stated a colorable claim for relief. Rule 4, Rules --— § 2254 Cases. As a consequence, an order (Docket Entry No.6) was entered directing the respondent to file an answer, plead, or otherwise respond to the petition.

Presently before the Court is the respondent's Answer (Docket Entry No.17), to which the petitioner has filed a Reply (Docket Entry No.18).

Having carefully considered the petition, respondent's Answer, petitioner's Reply and the expanded record, it appears that an

4

evidentiary hearing is not needed in this matter. *See* <u>Smith v. United States of America</u>, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is entitled to no relief). Therefore, the Court shall dispose of the petition as the law and justice require. Rule 8(a), Rules - - - § 2254 Cases.

### III. Analysis of the Claims

**A.) Procedurally Defaulted Claim**

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1).

While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. <u>Rose v. Lundy</u>, 455 U.S. 509, 518-20 (1982); <u>Lyons v. Stovall</u>, 188 F.3d 327,331 (6th Cir.1999). The petitioner must offer the state courts both the factual and legal bases for his claims. <u>Hicks v. Straub</u>, 377 F.3d 538,552 (6th Cir.2004). In other words, the petitioner must

5

present "the same claim under the same theory" to the state courts. *Id.* It is not enough that all the facts necessary to support a federal claim were before the court or that the petitioner made a somewhat similar state law claim. Anderson v. Harless, 459 U.S. 4,6 (1982). Once petitioner's federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. Manning v. Alexander, 912 F.2d 878, 883 (6th Cir. 1990).[3]

The petitioner alleges that he was sentenced in violation of the separation of powers (Claim No.4). This claim has never been raised in the state courts on either direct appeal (Docket Entry No.16-21) or during post-conviction proceedings (Docket Entry No.16-29).

Unfortunately, at this late date, the petitioner is no longer able to raise his separation of powers issue as a federal claim in the state courts. *See* Tenn. Code Ann. § 40-30-102(a) and (c). Therefore, by way of procedural default, the petitioner has technically met the exhaustion requirement with respect to this claim. Alley v. Bell, 307 F.3d 380, 385 (6th Cir. 2002)(if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas

---

[3] In Tennessee, a petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; *see also* Adams v. Holland, 324 F.3d 838 (6th Cir.2003).

6

corpus review).

The exhaustion of a claim *via* procedural default does not, however, automatically entitle a habeas petitioner to federal review of that claim. To prevent a federal habeas petitioner from circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of a federal constitutional issue forfeits the right to federal review of that issue, absent cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violations. <u>Gray v. Netherland</u>, 518 U.S. 152, 162 (1996).

A habeas petitioner can not rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, he must present affirmative evidence or argument as to the precise cause and prejudice produced. <u>Lundgren v. Mitchell</u>, 440 F.3d 754, 764 (6th Cir.2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with his ability to comply with the state procedural rule. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected with constitutional error. <u>United States v. Frady</u>, 456 U.S. 152, 170-72 (1982).

The petitioner's pleadings offer nothing to suggest cause for his failure to exhaust the separation of powers claim as a question

of federal law in the state courts in a timely manner. Nor has there been a showing of prejudice arising from the alleged violation. Thus, it appears at first blush, that review of this claim is not available.

The petitioner asserts in his Reply that, even if this claim has been procedurally defaulted, the Court should review it to prevent a fundamental miscarriage of justice. Docket Entry No.18 at pgs.7-8. Review of a procedurally defaulted claim is allowed when to do so is necessary to avoid a fundamental miscarriage of justice, i.e., the conviction of one who is actually innocent. <u>Bousley v. United States</u>, 523 U.S. 614,623 (1998). To establish actual innocence, the petitioner must show that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. <u>Schlup v. Delo</u>, 513 U.S. 298,327-328 (1995).

In this instance, the petitioner has not made the requisite showing of actual innocence. As noted below, the evidence was more than ample to support his convictions. Consequently, petitioner's separation of powers claim (Claim No.4) is not actionable. <u>Teague v. Lane</u>, 489 U.S. 288, 297-98 (1989)(denial of a claim is appropriate when the federal claim was not raised in the state appellate courts for review).

**B.) Fully Exhausted Claims**

The petitioner's remaining claims, i.e., the ineffective

assistance of counsel (Claim Nos.1a-c), <u>Brady</u> violations (Claim Nos.2a-e), and the sufficiency of the evidence (Claim No.3) were considered by the state courts on the merits and have been fully exhausted.

The availability of federal habeas corpus relief is limited with respect to claims that have been previously adjudicated on the merits in state court. <u>Harrington v. Richter</u>, 131 S.Ct. 770,780 (2011). When a claim has been adjudicated on the merits in state court, the state court adjudication will not be disturbed unless it resulted in a decision contrary to clearly established federal law or involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); <u>Nevers v. Killinger</u>, 169 F.3d 352, 357 (6th Cir.1999).

In order for a state adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. To grant the writ for an "unreasonable application" of federal law, the petitioner must show that the state court identified the correct governing legal principle involved but unreasonably applied that principle to the facts of the case. <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). In short, state court judgments must be upheld unless, after an

examination of the state court judgment, the Court is firmly convinced that a federal constitutional right has been violated. *Id.* at 529 U.S. 389.

**1.) Sufficiency of the Evidence**

The right to due process guaranteed by the Constitution ensures that no person will be made to suffer the onus of a criminal conviction except upon sufficient proof. Sufficient proof has been defined as the "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 99 S.Ct. 2781, 2787 (1979). When weighing the sufficiency of the evidence to support a criminal conviction, the Court must view the evidence in a light most favorable to the prosecution. *Id.,* 99 S.Ct. at 2789. The only question this Court need answer "is whether that finding was so unsupportable as to fall below the threshold of bare rationality." Cavazos v. Smith, 132 S.Ct. 2,4 (2011).

Petitioner's sufficiency of the evidence claim (Claim No.3) was presented to the state courts during the direct appeal of his convictions. Docket Entry No.16-21. A jury found the petitioner guilty of first degree felony murder and especially aggravated robbery. A state appellate court determined that there was sufficient evidence to support petitioner's convictions. Docket Entry No.16-23 at pg.18. This claim will provide a basis for federal habeas relief only if the Court finds that the ruling of

the state courts on this issue was either contrary to or was an unreasonable application of clearly established federal law. Williams, *supra.*

The petitioner and the victim (Frank Andrews) were residents at the same motel in Nashville. On June 5,1995, they met for the first time at the motel pool. The pair drank beer together for a couple of hours and then left for a liquor store where they purchased more beer and a bottle of vodka. Docket Entry No.16-14 at pg.130.

Upon returning to the motel, the pair went to the petitioner's room and resumed their consumption of alcohol. Shortly thereafter, the petitioner's girl friend, Michelle Scheffel, joined them. An argument ensued between the petitioner and Scheffel. During the argument, he put his hands around her throat. *Id.* at pg.97. The victim intervened, and the men decided to continue their drinking in the victim's room.

After drinking for at least another hour, the petitioner and the victim began to argue. *Id.* at pg.132. Scheffel was present and witnessed the argument. *Id.* at pg.52. The victim "rushed" the petitioner. *Id.* at pg.132. As they struggled, the petitioner hit the victim over the head with a vodka bottle. *Id.* at pgs.52-53. When this did not seem to slow him down, the petitioner hit the victim in the head a second time with the vodka bottle. *Id.* at pg.133. Scheffel returned to her motel room.

The petitioner noticed that the victim was bleeding. He took him by the arm and helped the victim to the bathroom door. *Id.* at pg134. As he was leaving, the petitioner took the victim's wallet from a night stand. *Id.* at pg.135. The wallet contained over two hundred dollars in cash that he removed and placed in his pocket. *Id.* at pg.169.

The petitioner gathered his belongings and left the motel with Scheffel. *Id.* at pg.54. Scheffel noticed that the petitioner had bruising on his knuckles and some blood splatter on his shirt. *Id.* at pg.56. The victim's body was discovered the following day in the bathroom. His pant pockets had been turned inside out and cut electrical and telephone cords were found in the bath tub. Docket Entry No.16-12 at pg.140. The petitioner and Scheffel were later apprehended in Evansville, Indiana.

Petitioner's trial strategy consisted of arguing that the petitioner's blows were not the cause of the victim's death, that the petitioner acted in self defense, or that someone else entered the victim's room after the petitioner had left and murdered him. Obviously, the jury chose not to accredit the petitioner's defenses.

Especially aggravated robbery is defined in Tennessee as the intentional or knowing theft of property from another accomplished with a deadly weapon and where the victim suffers serious bodily injury. Tenn. Code Ann. § 39-13-403(a). Felony murder is the

12

killing of another in the perpetration of or attempt to commit ... a robbery. Tenn. Code Ann. § 39-13-202(a)(2).

The petitioner admitted to hitting the victim twice over the head with a vodka bottle. Docket Entry No.16-14 at pg.133. His fingerprints were found on a broken vodka bottle in the victim's room. Docket Entry No.16-13 at pg.85. The petitioner then noticed that the victim's head was bleeding. Docket Entry No.16-14 at pg.134. He did not render the victim any medical assistance. Instead, he took the victim's wallet and pocketed his money, collected his belongings and his girlfriend, and fled the motel without telling anyone about the victim's condition. He was apprehended in another state. From this evidence, any rational trier of fact could reasonably infer that the petitioner caused the victim's death with a broken vodka bottle and then robbed him. Therefore, it does not appear that the state courts violated clearly established federal law by holding that the evidence was sufficient to support petitioner's convictions. For that reason, the state court ruling as to the sufficiency of the evidence will not be disturbed.

**2.) Brady Claims**

During the trial, the prosecution disclosed to the defense several pieces of information that could be characterized as exculpatory in nature. The petitioner believes that he was denied a fair trial because of the delayed disclosures (Claim No.2a-e).

13

The suppression by the prosecution of evidence favorable to the accused violates due process where the evidence is material to either guilt or punishment. <u>Brady v. Maryland</u>, 373 U.S. 83,87 (1963). Evidence favorable to the accused includes evidence that is exculpatory in nature as well as evidence that can be used to impeach prosecution witnesses. <u>United States v. Bagley</u>, 473 U.S. 667,676-677 (1985).

In general, though, the principles announced in <u>Brady</u>, *supra*, do not apply to a tardy disclosure of exculpatory information, but to a complete failure to disclose. <u>United States v. Holloway</u>, 740 F.2d 1373,1381 (6th Cir.), *cert. denied*, 469 U.S. 1021 (1984). If previously undisclosed evidence is disclosed, as here, during trial, no <u>Brady</u> violation occurs unless the defendant has been prejudiced by the delay in disclosure. <u>United States v. Word</u>, 806 F.2d 658,665 (6th Cir.1986), *cert. denied*, 480 U.S. 922 (1987). The overriding concern is with the justice of the finding of guilt, not with the accused's ability to prepare for trial. <u>United States v. Agurs</u>, 427 U.S. 97,112-113 (1976).[4]

On the first day of trial, the prosecution provided defense counsel with evidence of unidentified fingerprints at the crime scene and a report showing that Scheffel's fingerprints were found on a beer bottle at the motel. Docket Entry No.16-5 at pg.9; Docket

---

[4] There is nothing in <u>Brady</u> or <u>Agurs</u> to require that such disclosures be made before trial. <u>United States v. McPartlin</u>, 595 F.2d 1321,1346 (7th Cir.), *cert. denied*, 444 U.S. 833 (1979).

14

Entry No.16-13 at pgs.66-67. The petitioner argues that this evidence would have bolstered his defense that someone else had entered the victim's room after he left and murdered the victim (Claim No.2a).

The record shows that the prosecution turned this information over to the defense as soon as it became available. One would expect any number of unidentified fingerprints in a high occupancy area such as a motel room. These fingerprints were available for the defense to inspect since before the petitioner's first trial. The defense had an opportunity to cross examine the state's fingerprint expert about the unidentified fingerprints found in the victim's room. As for Scheffel's fingerprints being on a beer bottle, the petitioner has neglected to show that this piece of evidence had any relevance at all. The Court is left to speculate as to where at the motel the beer bottle was found and, since it was not the murder weapon, her fingerprints on it probably had no bearing whatsoever upon the petitioner's guilt or innocence. These things, coupled with the petitioner's fingerprints being found on the murder weapon (broken vodka bottle) and his admission that he struck the victim twice in the head, do not suggest any prejudice arising from the untimely disclosure of the fingerprint evidence.

The petitioner also argues that the delayed disclosure of Scheffel's interview with an Evansville Detective (Phillip George) violated <u>Brady</u> (Claim No.2b). He asserts that this evidence would

15

have been valuable for impeachment purposes, since Scheffel statements during the interview were inconsistent with statements she made to other law enforcement officers. Docket Entry No.16-5 at pgs.11-23; Docket Entry No.16-6 at pgs.48-50.

The state appellate court found that the delayed disclosure of the interview was not prejudicial to the defense. Docket Entry No.16-23 at pg.25. In the interview, Scheffel told Detective George that she did not know the victim or anything about his murder. This, of course, was later determined to be untrue. At trial, Scheffel acknowledged the inconsistencies and the defense extensively cross examined her about them. Docket Entry No.16-14 at pgs.83-91. It does not appear, therefore, that the state court's ruling on this issue was inconsistent with federal law.

On the third day of trial, the prosecution notified the defense of a damaged videotape from Evansville containing statements of the petitioner with his mother and with Scheffel. Docket Entry No.16-18 at pg.9. The petitioner claims that the prosecution's failure to disclose the damaged videotape in a more timely fashion prejudiced his ability to subpoena the officer who made the videotape or rehabilitate the videotape prior to trial (Claim No.2c).

The defense was unable to repair the videotape during the eleven week period from the end of the trial to the hearing on petitioner's motion for a new trial. While the videotape did show

16

the petitioner sitting with his mother and Scheffel, there was no audio from the videotape. Thus, the petitioner has been unable to demonstrate that this particular piece of evidence was exculpatory in nature. In the absence of any showing that the videotape may have been exculpatory, no <u>Brady</u> violation occurred by its tardy disclosure.

The prosecution also informed the defense of supplemental reports and evidence obtained by Larry Flair, a Metro homicide Detective (Claim No.2d).[5] After reviewing the reports, defense counsel conceded to the court that "I don't see anything in the reports that would necessarily be my smoking gun today". Docket Entry No.16-14 at pg.110. Moreover, even though the defense had the opportunity to call Detective Flair during its proof to question him more fully about the contents of the reports, it chose not to do so. As for the shoes confiscated by Detective Flair, the petitioner has offered nothing to show of what potential relevance they might have made to the defense. For that reason, the Court finds no merit in this claim.

The petitioner finally alleges that the delayed disclosure of the above mentioned evidence had the cumulative effect of compromising his right to a fair trial (Claim No.2e).

While it is clearly troubling that so much evidence was not

---

[5] The evidence consisted of several pairs of shoes taken from the petitioner in Evansville, including the shoes that the petitioner wore when he struck the victim with the vodka bottle.

17

given to the defense prior to trial, the petitioner has nevertheless failed to show in what way the delayed disclosure of the evidence deprived him of a fundamentally fair trial. Consequently, the cumulative effect of the disclosures in question do not rise to the level of a <u>Brady</u> violation.

**3.) Ineffective Assistance of Counsel**

The petitioner's remaining claims allege three instances in which trial counsel was ineffective. First, counsel was allegedly ineffective "due to the State's delayed disclosure of exculpatory evidence" (Claim No.1a). Counsel was also ineffective for failing to move for a continuance following the delayed disclosure of evidence (Claim No.1b). Third, counsel was ineffective for failing to call as a witness a physician (Dr. Christopher Conavay) who would have testified that the victim's medication could have caused the bleeding that led to his death (Claim No.1c).

The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. <u>McMann v. Richardson</u>, 379 U.S. 759, 771 (1970). To establish a violation of this right, the petitioner bears the burden of pleading and proving that his attorney's performance was in some way deficient and that the defense was prejudiced as a result of the deficiency. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Prejudice arises when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.*

18

at 466 U.S. 694. When considering such a claim, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. <u>Mallett v. United States</u>, 334 F.3d 491, 497 (6th Cir. 2003).

As noted above, no prejudice has been shown from the delayed disclosure of evidence. Therefore, in the absence of a showing of prejudice, counsel was not ineffective simply because the prosecution did not disclose evidence in a timely manner. <u>Strickland</u>, *supra.* Nor has the petitioner shown prejudice arising from counsel's failure to seek a continuance to better process and evaluate the untimely evidence. Consequently, counsel was not ineffective for failing to move for a continuance.

The defense strategy included an effort to suggest that the victim had died from something other than the petitioner's blows to his head. In that regard, two medical experts (Dr. Murray Smith and Dr. O.C. Smith) were called to refute the medical examiner's findings as to the victim's cause of death. When asked at the post-conviction evidentiary hearing why she did not call a third physician, Dr. Christopher Conavay, defense counsel explained that his testimony would have been redundant. Docket Entry No.16-27 at pg.91. It appears from the record that this is a reasonable explanation for failing to call a third medical expert. As a result, the state courts did not offend federal law by finding that

19

counsel had not been ineffective in this regard.

## IV. Conclusion

The state courts determined that the petitioner's fully exhausted claims lacked merit (Claim Nos.1a-c, 2a-e and 3). The record supports these findings. The petitioner has failed to demonstrate in what way the legal analysis of the state courts ran contrary to federal law. Accordingly, having carefully reviewed the record, it appears that the state court adjudication of petitioner's fully exhausted claims was neither contrary to nor an unreasonable application of federal law. Consequently, these claims have no merit.

An appropriate order will be entered.

_____
Kevin H. Sharp
United States District Judge